```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| VIRTEK VISION INTERNATIONAL INC.,<br>     Plaintiff,<br><br>        v.<br><br>ASSEMBLY GUIDANCE SYSTEMS, INC.<br>DBA ALIGNED VISION,<br>     Defendant. | No. 20-cv-10857-ADB |

**<u>MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER
AND PLAINTIFF'S CROSS-MOTION TO COMPEL</u>**

CABELL, U.S.M.J.

In May 2020, Virtek Vision International Inc. ("Virtek" or "the plaintiff") filed suit against Assembly Guidance Systems, Inc. dba Aligned Vision ("Aligned" or "the defendant")) for infringing Virtek's Patent No. 10,052,734 ("the '734 patent"). (D. 1). Virtek alleges Aligned infringed its patent via Aligned's TARGETGUIDE ("TargetGuide") product and the complaint sets out claims for: direct infringement under 35 U.S.C. § 271(a), contributory infringement under 35 U.S.C. § 271(c), and inducing infringement under 35 U.S.C. § 271(b). (Id.).

On February 6, 2023, Aligned filed a motion for a protective order under Federal Rule of Civil Procedure 26(c) ("Rule 26(c)") to "exclud[e] from discovery documents and testimony concerning

Aligned['s] . . . business plans" for its redesigned TargetGuide ("TG 2.0").  (D. 74).  Three days later, Virtek filed a cross-motion to compel and opposition to Aligned's motion.  (D. 77).  Virtek seeks to compel Aligned to:  (1) "[p]rovide supplemental responses to interrogatories seeking all information about [TargetGuide] products, including interrogatory numbers 3, 4, 9, 16, 17, 18, and 20-25"; (2) "[p]rovide responsive documents to Virtek's Second Requests for Production, which ask for documents related to" TG 2.0 (D. 79-14); and (3) "[r]e-produce its 30(b)(6) witness to answer questions about" TG 2.0.  (D. 77).

In seeking a protective order, Aligned asserts three primary arguments:  lack of relevance, prejudice, and no duty to supplement under Federal Rule of Civil Procedure 26(e) ("Rule 26(e)").  (D. 75, 82).  These three arguments and Virtek's corresponding arguments (D. 78, 85) are set out categorically below in conjunction with the court's rulings.  For the reasons stated, Aligned's motion for a protective order (D. 74) is denied and Virtek's motion to compel (D. 77) is allowed.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1) ("Rule 26(b)(1)"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)").  Relevance is "broadly

2

construed at the discovery stage." *Cabi v. Boston Children's Hospital*, No. 15-cv-12306-DJC, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017) (quoting *Green v. Cosby*, 152 F. Supp. 3d 31, 35 (D. Mass. 2015)). The requested information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Rule 26(c)(1), where there is "good cause," the court can "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden of demonstrating good cause rests on the proponent of the protective order," i.e., Aligned. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988). Such an order can be honed to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters" as well as "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986); *see also Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (describing good cause as flexible standard requiring "individualized balancing of the many interests that may be present") (citation omitted).

3

As these examples reflect, this Court has "broad discretion" to determine both "when a protective order is appropriate" and "what degree of protection is required." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  Accordingly, "great deference is shown to the district judge in framing and administering such orders." *Liggett Group*, 858 F.2d at 790.

## III.  DISCUSSION

### A.  Relevance

Virtek asserts that TG 2.0 is relevant to three issues. First, it is relevant to the "issues of infringement and an injunction" because TG 2.0 is "literally a new version of the main product accused of infringement." (D. 78, p. 7). Virtek reasons that if Aligned's use of TG 2.0 is infringing, it may implicate the scope of the injunction sought. (D. 78, pp. 7-8). Further, even "unaccused products" that are "reasonably similar to the accused products" are regularly held to be discoverable, according to Virtek. (D. 78, p. 8).

Second, Virtek argues that TG 2.0 is relevant to damages because "reasonable royalty damage assessments" consider the "[c]ost of avoiding infringement." (D. 78, p. 9). Third, Virtek maintains that TG 2.0 is relevant to "willful infringement" because it shows "[w]hether, how, and when Aligned . . . evaluated and responded to the claims of the '734 Patent, and whether and if

they omitted key functionality claimed in the patent." (D. 78, p. 9). The second and third reasons suffice to establish the relevance of the requested discovery, including the relevance of TG 2.0's business plans.[1]

1. **Damages**

Aligned seeks to "prevent disclosure of its business plans" for TG 2.0 because they "could only be relevant to damages," which Virtek has waived. (D. 75, pp. 1-2). Aligned thereby acknowledges that the business plans for TG 2.0 are "relevant to damages." (D. 75, p. 1). Virtek nevertheless waived damages because it objected to Aligned's November 2021 request for "[d]ocuments relevant to evaluating Virtek's damages claims" on the ground that it "was not seeking recovery of lost profits," according to Aligned. (D. 75, pp. 2-3). As a further basis for Virtek's waiver, Aligned refers to its October 27, 2022 disclosure to Virtek's counsel advising him of Aligned's "intention to enter the market with a revised product in 2023." (D. 75, p. 3). One month later, Aligned's counsel followed up with an email asking Virtek to confirm "whether Virtek will be modifying its position and seeking lost profits in this case," and, if so, when Aligned could "expect to receive

---

[1] *See infra* note 6. In fact, either the second or the third reason independently justify compelling the discovery Virtek requests and, relatedly, counsel against finding good cause to justify a protective order for TG 2.0's business plans.

5

supplemental discovery relevant to the lost profits claim." (D. 79-4).[2] Aligned argues that Virtek "changed its mind on damages" three months after learning of TG 2.0 and seven weeks before the end of discovery. (D. 75, p. 4).

In response, Virtek points out that lost profits are not the only form of damages. (D. 78, pp. 9, 11). Rather, a prevailing patent owner may recover a reasonable royalty. As to waiver, Virtek maintains it reserved the right to change its position on lost profits when and if Aligned "makes sales of products." (D. 78, p. 11). As such, it did not waive lost profits damages, and, in any event, the correspondence did not mention or waive reasonable royalty damages. (D. 78, pp. 11-12).

Under the Patent Act, damages can be measured as lost profits or a reasonable royalty. *See TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 783 (Fed. Cir. 2019) (describing "lost profits" and "reasonable royalty" as different "damages theories"). As its name suggests, reasonable royalty damages are based on a "'hypothetical negotiation,' which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement

---

[2] As indicated, Aligned's email asks if Virtek "will be seeking lost profits," not "damages." (D. 75-4). Further, Virtek responded by email the next day that "lost profits discovery is not relevant to the case unless and until Aligned . . . *actually makes sales of products*." (D. 75-4) (italics in original).

6

began.'"  *FCX Solar, LLC v. FTC Solar, Inc.*, 1:21-cv-03556 (RA), 2022 WL 3584946, at *3 (S.D.N.Y. Aug. 22, 2022) (quoting *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)) (finding discovery regarding alternative, "next-generation design" of solar tracker based on infringement of two other accused solar tracker products relevant to damages); *see also Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020) ("[D]etermination of a reasonabl[e] royalty . . . is based . . . on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began.") (quoting *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986)); *accord Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) (holding that date of hypothetical negotiations is date when infringement began).

Significantly, in calculating a reasonably royalty, a court may consider "the ease and cost of designing around the claimed invention." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 773 (Fed. Cir. 2014). The costs an infringer would incur to produce a non-infringing product are therefore relevant to the calculation. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (disagreeing with argument that "costs the infringer would incur to produce a non-infringing product are not relevant to the reasonable royalty" calculation). For example,

7

"[w]hen an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low." *Id*. Further, because expectations as opposed to actual results govern, *see Aqua Shield*, 774 F.3d at 772, it is the parties' expectations of costs as opposed to the future costs actually incurred that govern.[3]

Here, the costs to develop an alternative purportedly non-infringing design, namely, TG 2.0, are probative of the parties' expectations of the costs at or just prior to the time the infringement began. Thus, regardless of the admissibility of the information, *see* Fed. R. Civ. P. 26(b)(1) (noting information within "scope of discovery need not be admissible"), the costs and, more broadly, information regarding the difficulty or ease of the development of TG 2.0, are relevant and discoverable. *See generally FCX Solar*, 2022 WL 3584946, at *3-4. In addition, such information encompasses Aligned's business plans for TG 2.0. Moreover, Aligned fails to show good cause to protect the business plans for TG 2.0 from production as irrelevant.

Turning to Aligned's waiver argument, it overlooks the difference between lost profits and damages under the Patent Act.

---

[3] As an aside, "[e]vidence of the infringer's actual profits generally is admissible as probative of his anticipated profits" in calculating a reasonable royalty. *Aqua Shield*, 774 F.3d at 772 (citing *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)).

8

To establish Virtek's alleged waiver, Aligned notes that in November 2021 "Virtek objected to producing . . . documents because . . . Virtek was not seeking recovery of *lost profits*." (D. 75, pp. 2-3) (emphasis added). Aligned then points to an October 2022 exchange between the parties' counsel in which Aligned asks "whether Virtek will be modifying its position and seeking *lost profits* in this case." (D. 75, p. 3) (emphasis added). Accordingly, Virtek did not waive reasonable royalty damages. Indeed, it is doubtful that Virtek waived anything. Even assuming that Virtek did waive lost profit damages, an issue the court does not reach, Virtek did not waive reasonable royalty damages, a matter that the exchange does not reference. Aligned's argument does not mention "reasonable royalty" and conflates the broader category of damages with lost profits, which is only one theory of damages. *See Sealant*, 920 F.3d at 783. Accordingly, Aligned's waiver argument is not convincing as a basis to deny Virtek relevant discovery. Further, because the facts do not convince the court that Virtek waived reasonable royalty damages, Aligned fails to demonstrate good cause to preclude discovery of TG 2.0's business plans.

### 2. Willful Infringement

Next, Virtek argues that discovery regarding TG 2.0 is relevant to willful infringement. (D. 78, pp. 9, 12). More specifically, whether and how Aligned evaluated and responded to

9

the infringement claims of the '734 patent is relevant to the willfulness analysis, according to Virtek. (D. 78, p. 9). Virtek further submits that whether Aligned "omitted key functionality claimed in the patent" is likewise relevant to the willfulness analysis.[4] (D. 78, p. 9).

A finding of willful infringement may enhance the amount of damages. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). Further, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant" such enhanced damages. *Id.* at 105. The applicable assessment requires "considering the totality of the circumstances." *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *accord SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 608-609 (D. Mass. 2018) (collecting and citing Federal Circuit cases) (citations omitted).

Here, whether Aligned's design of TG 2.0 constituted a good-faith effort to design around the '734 patent is material to determining whether it acted willfully.[5] *See Eko Brands, LLC v.*

---

[4] Aligned does not address or dispute the relevancy of the requested information to show willfulness. Moreover, Aligned had ample opportunity to dispute the willfulness argument in its reply brief. Its waiver constitutes an independent basis to find the information relevant and to conclude that Aligned fails to show good cause to protect TG 2.0's business plans. *See Dusel v. Factory Mut. Inc. Co.*, 52 F.4th 495, 513-514 (1st Cir. 2022).

[5] Aligned represents that TG 2.0 "was in beta" on October 27, 2022. (D. 75, p. 3).

10

*Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1377 (Fed. Cir. 2020) (stating whether defendant acted willfully includes "whether or not [it] made a good-faith effort to avoid infringing the Eko 855 patent, for example, whether [it] attempted to design around the 855 patent"). Accordingly, "*discovery* into the nature and extent of a defendant's attempt to design around the patent is relevant to . . . whether a defendant's infringement was willful." *FCX Solar*, 2022 WL 3584946, at *6 (emphasis added). The circumstances of the design of TG 2.0, purportedly made to avoid infringement (D. 75, p. 6), are therefore relevant to whether Aligned acted willfully.[6] See *FCX Solar*, 2022 WL 3584946, at *5-6 (allowing discovery of redesign as relevant to willfulness). Further, per the foregoing, Aligned again fails to make the necessary showing of good cause to warrant protecting TG 2.0's business plans from the discovery encompassing them sought by Virtek.

---

[6] Separately, as previously indicated, because of the relevance of the requested information to damages and willfulness, it is not necessary to address Virtek's arguments regarding infringement and the scope of an injunction as well as reasonable similarity. See *FCX Solar*, 2022 WL 3584946, at *4 (not addressing defendant's reasonable similarity argument and noting it "cites to no case where a plaintiff had to show that the products were 'reasonably similar' for discovery relating to an unaccused product to be permitted where, as here, the discovery was sought to support a damages calculation"). Relatedly, Aligned's contention that TG 2.0's modified software and business plans are not at issue (D. 75, p. 6) is not convincing as a basis to preclude discovery given their relevance to damages and willfulness.

**B.   Prejudice**

Aligned also argues for the protective order based on prejudice because this "lawsuit is bad for business." (D. 75, p. 4). Further, says Aligned, Virtek has neither "taken . . . action to join the issue" of TG 2.0 nor challenged TG 2.0, so it is "too late for Virtek to change course." (D. 75, p. 4). To allow discovery on TG 2.0, then, would "require an entirely new round of discovery," according to Aligned. (D. 75, p. 4). As such, the case should be "resolved on schedule." (D. 75, p. 4). Aligned does not cite any legal authority to support these arguments. Virtek disputes these assertions of prejudice. It points out that discovery is not closed, the parties have not exchanged expert reports, and there is no set trial date. (D. 78, p. 15).

First, Rule 26(c) allows the court to preclude discovery of the business plans upon a showing of good cause based on an "undue burden or expense." Fed. R. Civ. P. 26(c). Aligned does not make a particularized showing of expense or undue burden beyond broad assertions, including that production will engender "an entirely new round of discovery." (D. 75, p. 4). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasons," however, "do not satisfy the Rule 26(c) test." *Heagney v. Wong*, Civil Action No. 15-40024-TSH, 2016 WL 2901731, at *3 (D. Mass. May 18, 2016) (quoting *Cipollone v. Liggett Gr., Inc.*, 785

F.2d 1108, 1121 (3d Cir. 1986)); *Grano v. Sodexo Mgmt., Inc.*, 335 F.R.D. 411, 414 (S.D. Cal. 2020) (same) (citations omitted).

Second, Virtek correctly points out that discovery remains open. A trial date has not been set and expert reports have not been exchanged. On March 14, 2023, the presiding district judge extended fact discovery for 60 days after this court issues a ruling on the two pending motions. Further, she limited discovery during this period "to the topics of discovery at issue in the contested motions" (D. 74, 77) and stated that the discovery "may include depositions related to the disputed topics of discovery." (D. 91). Sixty days of this limited and circumscribed discovery is not prejudicial and amounts to no more than the "ordinary burdens associated with litigating a case." *Ledezma v. Young Life*, No. 20-cv-01896-NYW, 2021 WL 2823261, at *9 (D. Colo. Jan. 8, 2021) (noting "court's discretion to enter protective orders . . . is reserved for circumstances that present more than the ordinary burdens of litigation or the unpleasantness that may be associated with discovery or litigation"). Moreover, the "entirely new round of discovery" (D. 75, p. 4) asserted by Aligned falls within the contours of the schedule set by the District Court. (D. 91). In all, the circumstances do not show prejudice and they do not justify entering a protective order or not compelling the discovery Virtek seeks.

**C.  Rule 26(e) Supplementation**

In anticipation of an argument by Virtek that Aligned had a duty to supplement or update prior discovery responses by producing the business plans for TG 2.0, Aligned argues that it has no duty to supplement under Rule 26(e).  (D. 75, pp. 4-5).  Aligned submits that because its "current marketing plans did not exist" at the time of Aligned's responses to Virtek's written discovery requests, Aligned thus made a "complete disclosure at the time," which is what matters for purposes of Rule 26(e).  (D. 75, pp. 5-6).  In short, Aligned's supplementation argument is based on the premise that its "discovery responses were complete and accurate when made."  (D. 75, p. 5).

Virtek disputes Aligned's "novel argument" that Rule 26(e)'s requirements do not apply so long as the initial disclosure was complete when made.  (D. 78, p. 14).  This reading, Virtek argues, "is directly contrary to the language of Rule 26(e)."  (D. 78, p. 14).

The plain language of Rule 26(e) applies to "[a] party who *has* . . . responded to . . . [a] request for production." Fed. R. Civ. P. 26(e)(1) (emphasis added).  The rule further states in mandatory terms that this party "must supplement" its response if it "*learns* that in some material respect the disclosure or response is incomplete or incorrect, and if the *additional* or corrective information has not otherwise been made known to the other parties

14

. . . ." Fed. R. Civ. P. 26(e)(1) (emphasis added). "A standard definition of 'additional' includes anything added or further to something that exists." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 76 (W.D.N.Y. 2011) (dictionary citation omitted). Hence, the term "additional" is "not limited to documents existing prior to a response; rather, the term broadly applies to any piece of 'additional' information without reference to the date of its existence." *Id.* As also aptly reasoned in *Robbins & Myers*, "a party which responds to a request that no responsive document exists" and "at a later time creates another responsive document which the party then knows, or reasonably should know, is materially within the scope of the earlier request most certainly 'learns' of the existence of the document thereby triggering the duty to" provide "a supplemental response." *Id.* at 77.

In accordance with the foregoing and adhering to the additional analysis of the legislative history of Rule 26(e) in *Robbins & Myers*, Aligned's argument that it has no duty to supplement because the disclosure was complete when made fails to persuade. *See id.* at 74-77 (rejecting argument that documents later created and responsive to document requests "are not within the supplementation duty under Rule 26(e)"). Simply put, "[t]he duty to supplement applies to responsive documents that are created after a party has served a response to a discovery request." *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 260

15

(W.D.N.Y. 2013) (citing *Robbins & Myers*, 274 F.R.D. at 76-77). Here, the duty to supplement applies to, for example, request numbers five and twenty-seven in Virtek's first request for production of documents. The former request asks for "[a]ll documents that . . . relate to any claim, defense, allegation, or potential *remedy* in this lawsuit." (D. 79-4, p. 3). The latter request specifically and directly asks for "documents relating to any attempts to design around or modify the Accused Products to avoid infringement of any Patent-in-Suit." (D. 79-4, p. 8). Aligned has a duty to supplement these requests with subsequently-created documents that are responsive to these and other prior discovery requests.

## IV.  CONCLUSION

For the foregoing reasons, Aligned's motion for a protective order (D. 74) is **DENIED**, and Virtek's cross-motion to compel (D. 77) is **ALLOWED**. Aligned is ordered to provide all of the discovery that Virtek seeks in the motion to compel.

So Ordered.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  May 12, 2023